UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRIAN A. MAUS,

                Plaintiff,

v.                                          Case No. 17-cv-65-pp

MICHAEL BAENEN, PETE ERICKSON,
LESATZ, CAPTAIN STEVENS,
LADE, MICHAEL MOHR,
KATHY FRANCOIS, WELCOME ROSE,
CHARLES FACKTOR, CHARLES COLE,
CINDY O'DONNELL, and SCOTT WALKER,

                Defendants.

**DECISION AND ORDER SCREENING THE PLAINTIFF'S
SECOND AMENDED COMPLAINT (DKT. NO. 9) AND DENYING THE
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 10)**

        The plaintiff filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. He filed an amended complaint on December 18, 2017, which replaced his original complaint. Dkt. No. 7. The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. The PLRA requires courts to screen a prisoner-plaintiff's complaint before allowing the case to proceed to ensure the complaint states a claim and that it is neither legally frivolous nor malicious. 28 U.S.C. §1915A(a).

        On March 16, 2018, the court screened the plaintiff's amended complaint. Dkt. No. 8. The court found that the amended complaint did not comply with Federal Rules of Civil Procedure 8, 18 and 20, so it gave him the

opportunity to file a second amended complaint. The court received that second amended complaint on April 17, 2018. Dkt. No. 9. That same day, the plaintiff also filed a motion for a preliminary injunction, which he supplemented a little more than a week later. Dkt. Nos. 10, 12. This order screens the plaintiff's second amended complaint and resolves the motion.

**I. Screening the Plaintiff's Second Amended Complaint**

　A. The Federal Pleading Standard

　　To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

　　To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B. The Plaintiff's Allegations

The plaintiff alleges that, on multiple occasions from May 2011 through August 2011, defendant Lade "sexually assaulted" him by grabbing his penis and touching him around his groin area when he performed pat-down searches of the plaintiff. Dkt. No. 9 at 3-6. The plaintiff asserts that, on at least two occasions (May 28 and 29, 2011), defendant Lesatz was present when Lade inappropriately touched him. Id. at 3. The plaintiff alleges that when he told Lesatz about Lade's alleged misconduct, Lesatz told him "he shouldn't of came to prison." Id. The plaintiff states that, when he told them he was going to file an inmate complaint, "Lade stated he doesn't give a fuck, it ain't going to stop" and "Lesatz stated that he will make sure the plaintiff is searched every day he comes out of his cell . . . ." Id.

The plaintiff filed multiple inmate complaints about Lade's alleged misconduct over the course of several months. Id. at 3-6. He also wrote a letter to Governor Scott Walker and filed a "criminal John Doe complaint" with the Brown County District Attorney's Office. Id. at 5-6. According to the plaintiff, despite telling Lade that the plaintiff was making these complaints, Lade continued to sexually assault him every time he performed a pat-down search of the plaintiff. Id. at 3-6.

The plaintiff also alleges that defendants Michael Mohr, Michael Baenen, Pete Erickson, Welcome Rose, Charles Cole, Charles Facktor, Kathy Francois and Captain Stevens all conspired at various times and in various combinations when they evaluated the plaintiff's inmate complaints. Id. at 3-6.

3

The plaintiff also alleges that Mohr, Baenen, Erickson and Stevens failed to investigate his claims against Lade and that Walker failed to respond to his letter. Id. at 4-5.

    C. The Court's Analysis

Although the plaintiff frequently refers to a "conspiracy" throughout his second amended complaint, he has failed to state a conspiracy claim. Conspiracy is not an independent basis for liability under §1983. Lewis v. Washington, 183 Fed. App'x 553, 554 (7th Cir. 2006). "Section 1983 does not . . . punish conspiracy." Id. (citing Goldschmidt v. Patchett, 686 F.2d 582, 585 (7th Cir. 1982)). In order for a defendant to be liable under §1983, that defendant must actually have denied the plaintiff's constitutional rights, not just conspired to do so. Goldschmidt, 686 F.2d at 585 (citations omitted). The court will not allow the plaintiff to proceed on a conspiracy claim against any of the defendants.

With regard to the plaintiff's allegations against Lade, "[a] prison guard carrying out a prison security measure can violate the Eight[h] Amendment in one of two ways: by maliciously inflicting pain or injury, or by performing some action that is intended to humiliate the victim or gratify the assailant's sexual desires." Gillis v. Pollard, 554 Fed. App'x 502, 505 (7th Cir. 2014) (internal citations and quotations omitted). The plaintiff has alleged sufficient facts to allow him to proceed on an Eighth Amendment claim against Lade, based on his allegations that Lade touched his penis and groin numerous times during pat-down searches. The plaintiff also has alleged sufficient facts to allow him to

4

proceed against Lesatz, based on his allegations that Lesatz, who was present during some of the alleged sexual contacts, failed to intervene to stop Lade's alleged misconduct after the plaintiff complained to him. See Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994) (holding that a plaintiff may state a claim for failure to intervene by showing that "any constitutional violation has been committed by a law enforcement official; *and* the [defendant] had a realistic opportunity to intervene to prevent the harm from occurring.")

To state a claim of retaliation in violation of the First Amendment, a plaintiff must show that he engaged in an activity protected by the First Amendment, that he suffered a deprivation likely to prevent future protected activities, and that there was a causal connection between the two. See Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010); Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). The plaintiff has alleged sufficient facts to allow him to proceed with a retaliation claim against Lade and Lesatz, based on his allegations that, in response to his statements that he had filed inmate complaints about Lade's alleged misconduct, they told the plaintiff that Lade would continue searching him every time he left his cell.

The court will not, however, allow the plaintiff to proceed on claims against Mohr, Baenen, Erickson, Rose, Cole, Facktor, Francois, Stevens and Walker in connection with their roles in reviewing the plaintiff's complaints. "Public officials do not have a free-floating obligation to put things to rights . . . ." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). This is because "public employees are responsible for their own misdeeds but not for anyone

5

else's." Id. Denying a prisoner's complaint or failing to investigate a prisoner's allegations of past misconduct does not itself violate a prisoner's constitutional rights, nor does it make a person liable for the alleged violations of another. See id.

To the extent the plaintiff alleges that Mohr, Baenen, Erickson and Stevens turned a blind eye to Lade's alleged misconduct when they failed to investigate the plaintiff's complaints, the plaintiff fails to state a claim. He has not made sufficient factual allegations to allow the court to reasonably infer that these defendants did what he says they did. The plaintiff alleges that Mohr informed him that an investigation had been opened, and that Stevens told him that he would look into the plaintiff's complaints. The plaintiff does not allege any facts to undermine these representations or to call them into question—he merely speculates that, because they did not affirm his complaints, these defendants must not have investigated. However, as the Supreme Court has explained, a complaint's allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted). Because the plaintiff's allegations on this point "are no more than conclusions, [they] are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

The court will allow the plaintiff proceed on claims against Lade and Lesatz under the First and Eighth Amendments; it will dismiss the remaining defendants.

6

## II. The Plaintiff's Motion for Preliminary Injunction

On April 17, 2018, the plaintiff filed a motion for preliminary injunction. Dkt. No. 10. He asks the court to "order the plaintiff to be sent to a different max or medium security prison w[h]ere he can do his programs and vocational school." Dkt. No. 10 at 8. The plaintiff explains that he was transferred (it is not clear by whom) from Green Bay Correctional, where he had been housed for the last ten years, to Boscobel (the Wisconsin Secure Program Facility) because he filed this lawsuit and because he complained that the kitchen roof was leaking. Id. at 1-2. He explains that Boscobel is much more secure than Green Bay and that there is less movement, no jobs, no school and no programs. Id. He states that at Green Bay he was out of his cell six to eight hours per day, but at Boscobel, he is locked in his cell for twenty-two to twenty-four hours per day. Id.

The plaintiff also alleges that various people (only some of whom are defendants) retaliated against him by giving him conduct reports, putting him in segregation and/or in cell confinement, exposing him to danger by telling inmates that he had filed complaints against them, and interfering with his mail. Id. at 2-7; Dkt. No. 12. The plaintiff also alleges that Boscobel Warden Gary Boughton and his staff (who are not defendants) are discriminating against him by not giving him a job. Dkt. No. 10 at 7.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, 555 U.S. 7, 22 (2008). A preliminary

7

injunction is appropriate only if it seeks relief of the same character sought in the underlying suit. Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."); Neuroscience, Inc. v. Forrest, No. 12-cv-813-bbc, 2013 WL 6331348, at *1 (W.D. Wis. Dec. 5, 2013) (denying motion for preliminary injunction because it raised issues outside scope of complaint).

The court is allowing the plaintiff to proceed on claims against Lade and Lesatz on allegations that Lade inappropriately touched the plaintiff during pat-down searches. The relief the plaintiff seeks in his motion—that he be transferred to another institution—has nothing to do with his claims against these correctional officers. The plaintiff is not entitled to preliminary injunctive relief.

The court also notes that the decision regarding where to place an inmate is the responsibility of prison administration. Courts "are reluctant to interfere with the administration of the prisons." Gillis v. Litscher, 468 F.3d 488, 495 (7th Cir. 2006). Prison administrators are given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Finally, the events that the plaintiff describes in his motion for injunction relief happened *after* the plaintiff filed the complaint in this case. If the plaintiff believes that prison staff have violated his constitutional rights in other ways

since the day he filed this suit, he must raise those claims in a separate complaint.

### III. Conclusion

The court **DENIES** the plaintiff's motion for preliminary injunction. Dkt. No. 10.

The court **DISMISSES** defendants Baenen, Erickson, Stevens, Mohr, Francois, Rose, Facktor, Cole, O'Donnell, and Walker.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** the clerk's office to electronically send copies of the plaintiff's complaint and this order to the Wisconsin Department of Justice for service on defendants Lade and Lesatz.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** defendants Lade and Lesatz to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated in Milwaukee, Wisconsin, this 16th day of July, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**